**Alvin KAUFMAN et al., and others similarly situated, Plaintiffs,**

v.

**SIRIUS XM RADIO, INC., Defendant.**

**No. 09 Civ. 9590.**

United States District Court,
S.D. New York.

Nov. 10, 2010.

Curtis J. Mase, Valentina M. Tejera, Mase, Lara & Eversole, P.A., David B. Mishael, David B. Mishael, P.A., Miami, FL, Michael D. Campbell, Campbell & Associates, Winter Haven, FL, for Plaintiffs.

Michael Stewart Oberman, Peter A. Abruzzese, Robin Marie Wilcox, Kramer Levin Naftalis & Frankel, LLP, New York, NY, for Defendant.

### *DECISION AND ORDER*

VICTOR MARRERO, District Judge.

Plaintiffs Alvin Kaufman ("Kaufman") and Richard LaLuna ("LaLuna") (collectively, "Plaintiffs") brought this action on behalf of themselves and all those similarly situated, against defendant Sirius XM Radio, Inc. ("Sirius"), asserting in their third amended complaint (the "Third Amended Complaint") claims asserting unlawful deception under New York General Business Law § 349 ("GBL § 349") and breach of contract. By letter to the Court dated June 11, 2010 ("Sirius's Pre–Motion Letter") and at the August 20, 2010 telephone conference with the parties (the "Telephone Conference"), Sirius indicated that

it intended to move to dismiss the Third Amended Complaint.

After discussing the basis for Sirius's contemplated motion with the parties, the Court directed Sirius and Plaintiffs to submit letter-briefs [1] stating their respective arguments and supporting authorities relating to two issues: (1) whether non-New York resident Kaufman (and those similarly situated) adequately pled deception that occurred in New York sufficient to state a GBL § 349 claim and (2) whether Plaintiffs sufficiently pled facts to support a viable breach of contract claim. The Court also stated that the briefing should be limited to these two issues, and should not include arguments relating to the merits of the GBL § 349 claim because the Court found dismissal on merits grounds would be premature at the pleading stage.

The Court indicated that it would deem Sirius's letter-briefs as a partial motion to dismiss pursuant Rule 12(b)(6) ("Rule 12(b)(6)") of the Federal Rules of Civil Procedure, and determine on the basis of the Telephone Conference and a review of the parties' Letter–Briefs whether (1) Plaintiffs' GBL § 349 claim should be limited to Subscribers who were allegedly deceived in New York and (2) their breach of contract claim should be dismissed altogether. *See* Fed.R.Civ.P. 12(b)(6). For the reasons discussed below, Sirius's partial motion to dismiss is GRANTED.

## I. *BACKGROUND* [2]

LaLuna, a resident of New York, and Kaufman, a resident of Nevada, assert a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, claiming to represent a potential class of "hundreds of thousands of [Sirius and Sirius's predecessors'] subscribers [ ("Subscribers") ]." (TAC ¶ 1.) Plaintiffs' claims arise from the contractual payment terms (the "Payment Terms") found in certain Sirius standard Subscriber contracts. Plaintiffs allege that "a portion of [Sirius's revenue], albeit [a] small [portion], likely is attributable to overcharging certain of its [S]ubscribers [the $2.00 Invoice Administration Fee (the "$2.00 Invoice Administration Fee") ] in a manner contrary to the [Payment Terms]." (*Id.* ¶ 2.) Specifically, the class consists of:

[S]ubscribers who tendered payment to Sirius in exchange for Sirius'[s] services and who paid a $2.00 Invoice Administration Fee when payment was made by any means other than a check or money order, (including but not limited to credit car [sic], debit card, Sirius Prepaid Card, XM Prepaid Card, gift card, and electronic funds transfer).

(*Id.* ¶ 14.)

Plaintiffs attach to the Third Amended Complaint several iterations of Sirius's Payment Terms. The Payment Terms in the September 8, 2007 contract read:

F. Payment: In return for receiving the Service, you agree to pay us as follows:

Subscription Fee: You must pay in advance by credit card or debit card. You may combine payment with a SIRIUS prepaid card. You may also pay by

---

**1.** The parties submitted the following: a letter-brief from Sirius, dated August 30, 2010; a letter-brief from Plaintiffs, dated September 3, 2010 ("Plaintiffs' September 3 Letter–Brief"); a letter-brief from Sirius, dated September 21, 2010 ("Sirius's September 21 Letter–Brief"); and a letter-brief from Plaintiffs, dated September 21, 2010 ("Plaintiffs' September 21 Letter–Brief") (collectively, the "Letter–Briefs").

**2.** The facts below are taken from the Third Amended Complaint, and the documents attached to it or incorporated by reference. The Court accepts these facts as true for the purposes of ruling on a motion to dismiss. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 180 (2d Cir.2008). Except where specifically referenced, no further citation to these sources will be made.

check or money order for Subscriptions of at least one year in length.... If you pay by check or money order you will receive an invoice by mail and will be required to make your first payment before your Subscription is activated.

Automatic Renewal: Your Subscription ... will automatically renew at the end of the Subscription Term unless you choose to cancel prior to that renewal.... Your account will automatically be charged (or you will be billed, as applicable) at the rates in effect at the time of renewal.

Administrative Fees: We will charge you one or more of the following fees, all of which are subject to change without notice: ... Invoice Administration Fee: If you commit to a Subscription of at least one year in length and elect to pay by check or money order, we will charge you an administration fee. The administration fee is currently $2.00 per invoice.

(*Id.*, Ex. D).

Further, the Payment Terms in the August 1, 2009 contract state:

Payment. In return for receiving the Service, you agree to pay us as follows:

1. Subscription Fee: You must pay in advance by credit card or debit card. You may also pay in advance by electronic funds transfer. You may combine payment with, as applicable, a SIRIUS or XM Prepaid Subscription card. You may also pay by check or money order. If you pay by check or money order you will receive an invoice by mail and will be required to make your first payment before your Subscription is activated.

2. Automatic Renewal: Your Subscription ... will automatically renew for another prepaid period of the same length.... Your account will automatically be charged (or you will be billed, as applicable) at the rates in effect at the time of renewal....

\*　　\*　　\*

5. Statements: If you are not using an electronic method of payment we will send you a statement for the billing plan you selected. If you elect to pay by check or money order, we may charge you a fee of up to $2.00 per Invoice. Otherwise, billing statements will be provided only upon request.

\*　　\*　　\*

8. Fees: We will charge you one or more of the following fees, all of which are subject to change without notice: ... Invoice Administration Fee: If you elect to pay by check or money order, we will charge you an administration fee. This administration fee is currently $2.00 per Invoice.

(*Id.*, Ex. E.)

After the commencement of this lawsuit, effective March 15, 2010, Sirius modified the Payment Terms (the "Payment Terms Modification") to read:

Statements: If you are not using an electronic method of payment, we will send you a paper statement for the billing plan you selected. If you receive an Invoice or you request an Invoice, we will charge you an Invoice administration fee on each Invoice rendered.

\*　　\*　　\*

Fees: We will charge you one or more of the following fees, all of which are subject to change without notice: ... Invoice Administration Fee: If you elect to receive an Invoice or you request an Invoice, we will charge you an Invoice administration fee on each Invoice rendered. The Invoice administration fee is currently $2.00 per invoice.

(*Id.*, Ex. H.)

Focusing here on the time period before the Payment Terms Modification, Plaintiffs allege that Subscribers who paid through one of several payment methods *in advance* of Sirius issuing an invoice

were not charged the $2.00 Invoice Administration Fee. Plaintiffs do not fit into this category of Subscribers because they paid the fee after Sirius issued an invoice to them. Those who paid by check or money order *after* Sirius issued an invoice were charged, pursuant to the Payment Terms, the $2.00 Invoice Administration Fee. Plaintiffs also do not fall under this group of Subscribers because they did not pay by check or money order. Instead, Plaintiffs fall into a third class of Subscribers—those who, upon receiving their Sirius invoices, did not pay Sirius *in advance* of receiving their invoices or by check or money order *after* receiving their invoices. Rather, they paid their accounts (including $2.00 Invoice Administration Fees presented in their bills) by some other means (*e.g.,* one-time credit card payment) *after* receiving an invoice.

Plaintiffs cry foul. According to them, "Sirius devised and was well aware of this improper charge and yet it neither informed its [S]ubscribers of the nature of the charge nor offered a refund of the administration fees or adequate compensation once it became apparent to Sirius that the invoice was paid by a means other than check or money order or simply not paid by check or money order." (*Id.* ¶ 26.) Moreover, Plaintiffs plead that "Sirius'[s] acts of charging and collecting [the $2.00] Invoice Administration Fee ... per subscriber who has not paid by check or money order are misleading and deceptive acts." (*Id.* ¶ 52.)

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

In assessing a motion to dismiss under Rule 12(b)(6), dismissal of a complaint is appropriate if the plaintiff has failed to offer factual allegations sufficient to render the asserted claim plausible on its face. *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)

(*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To state a facially-plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. The task of a court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Publ. Offering Sec. Litig.,* 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (quotation marks and citation omitted).

For the purposes of deciding a motion to dismiss, the Court accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the plaintiff's favor. *See Iqbal,* 129 S.Ct. at 1950 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002) (all reasonable inferences shall be drawn in plaintiff's favor). However, allegations that are no more than legal conclusions "are not entitled to the assumption of truth." *Iqbal,* 129 S.Ct. at 1950.

### B. *BREACH OF CONTRACT*

■ Sirius asserts that the Third Amended Complaint fails to adequately plead a breach of contract claim because the unambiguous language of the Payment Terms, according to the company, allowed it to charge the $2.00 Invoice Administration Fee "each time it provide[d] the service of generating and mailing an invoice."

(Sirius's September 21 Letter–Brief at 3.) Further, even if the Payment Terms did not unequivocally contemplate applying the $2.00 Invoice Administration Fee to Plaintiffs, Sirius argues that no contractual "language [provided] that Sirius [could] not charge the $2.00 [Invoice Administration Fee] to any subscriber who, upon receiving an invoice, pa[id] for the renewal subscription by means other than a check or money order ... because the [Payment] Terms contain [ed] no such prohibitory language." (*Id.* at 1.) Thus, Sirius seeks to establish that, even if the Payment Terms were ambiguous as to its contractual right to collect the $2.00 charge, it has not breached any contractual obligation to Plaintiffs.

With regard to Sirius's first argument, Sirius buttresses its assertion by bringing to the Court's attention the contractual language in the Payment Terms that explicitly states that the "[i]nvoice administration [f]ee is currently $2.00 per invoice." (TAC, Ex. D.) Thus, Sirius argues that the Payment Terms unequivocally include a $2.00 administration fee in exchange for the company providing an invoice to a Subscriber. While Sirius correctly quotes this language in the Payment Terms, the company omits the words immediately preceding that clause, which read: "If you elect to pay by check or money order, we will charge you an administration fee." (*Id.*; *see also id.*, Ex. E ("If you are not using an electronic method of payment we will send you a statement for the billing plan you selected. If you elect to pay by check or money order, we may charge you a fee of up to $2.00 per Invoice.").) Thus, the Court finds that the contractual language in the Payment Terms, on the rec-

ord before the Court, is, at best, not clear as to whether a Subscriber who receives an invoice, and who elects to pay through an electronic method such as a one-time credit card payment and not via check or money order, will be charged the $2.00 Invoice Administration Fee. Therefore, the Court cannot rule that the Payment Terms expressly and unambiguously contemplate Sirius charging the $2.00 Invoice Administration Fee to Plaintiffs.

However, the Court finds Sirius's second grounds for dismissing Plaintiffs' breach of contract cause of action persuasive. The Court provided clear instructions to Plaintiffs at the Telephone Conference, directing them to set forth in their contemplated letter-brief the language in the contract that they assert has been breached, what their interpretation of that clause is, and how the facts pled in the Third Amended Complaint support a breach of that provision. However, Plaintiffs' brief focuses exclusively on the GBL § 349 claim (and mostly on the merits of that count which the Court stated repeatedly would not be susceptible to dismissal at the pleading stage) and does not even mention the contractual cause of action. Indeed, Plaintiffs' September 3 Letter–Brief and Plaintiffs' September 21 Letter–Brief fail to point the Court to any contractual obligation on the part of Sirius to refrain from charging the $2.00 Invoice Administration Fee. Accordingly, the Court rules that the Plaintiffs have abandoned their breach of contract cause of action.[3]

Even had Plaintiffs attempted to justify their contractual claim, the Court agrees with Sirius that there is no factual basis in the Third Amended Complaint upon

---

**3.** The Court also acknowledges that the Plaintiffs' breach of contract claim did not appear in their initial complaint, perhaps reflecting counsel's inability to find a legally-enforceable promise by Sirius. Plaintiffs' omissions, when read in light of the lack of facts support-

ing a breach of contract claim in their pleading, are telling and serve only to solidify the Court's conclusion that they have failed to plead facts sufficient to support a viable breach of contract claim.

which to plausibly ground that count. That Sirius charged the $2.00 Invoice Administration Fee to Plaintiffs without having language in the Payment Terms that unambiguously permitted it to do so does not mean that it breached its contract with Subscribers by sending them invoices with the $2.00 Invoice Administration Fee and then collecting that $2.00 charge. Accordingly, the Court dismisses Plaintiffs breach of contract cause of action. Whether or not Sirius has deceived, as that term is defined under GBL § 349, certain of its Subscribers—despite language in its Payment Terms that unambiguously calls for at least those who receive an invoice and also pay by check or money order to pay a $2.00 Invoice Administration Fee—is a question for another day.[4]

## C. DECEPTION IN NEW YORK

■ Sirius next seeks partial dismissal because "Plaintiffs purportedly bring suit for a single, nationwide class under [GBL] § 349 ... rather than limiting the [GBL] § 349 claim to New Yorkers." (Sirius's Pre–Motion Letter at 2.) Specifically, the company argues that Subscribers such as Kaufman cannot recover on a GBL § 349 claim because they fail to allege that they were deceived in New York.

At various conferences in this matter, the Court stated that it was persuaded that a nationwide class suing under GBL § 349 would have to be limited to those who engaged in a transaction that deceived them in New York. At a December 15, 2009 telephone conference with the Court, Sirius pointed out that named plaintiff Kaufman was a Nevada resident who was in Nevada when he received the allegedly deceptive invoice from Sirius and that the alleged deceptive act had no relevant connection to New York. Approximately one month later, following up on that telephone conference by letter on January 15, 2010, Kaufman stated: "Having reviewed and considered [Sirius's initial] motion to dismiss and memorandum in support thereof, it is Plaintiff's intention to limit the class of Plaintiffs [to] those in New York State. Plaintiff believes this action will cure the material deficiencies in the complaint. Plaintiff intends to substitute the class representative ..."

GBL § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state*." N.Y. Gen. Bus. Law § 349 (emphasis added). In *Goshen v. Mutual Life Insurance Company of New York*, 98 N.Y.2d 314, 321, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (2002), the New York Court of Appeals addressed "whether an allegedly deceptive scheme that originates in New York, but injures a consumer in a transaction outside the state, constitutes an actionable deceptive act or practice under [GBL] § 349(a)." The court answered the issue presented in the negative, reasoning that:

[t]he reference in § 349(a) to deceptive practices in 'the conduct of any business, trade or commerce or in the furnishing of any service' *in this state* unambiguously evinces a legislative intent to address commercial misconduct occurring within New York. Indeed an examina-

---

**4.** Plaintiffs make much of Sirius's Payment Terms Modification after the initiation of this lawsuit. These updated Payment Terms unambiguously state that Sirius will charge the $2.00 Invoice Administration Fee to all Subscribers who opt to receive an invoice and do not contain what are the arguable qualifications that are found in the earlier versions of the Payment Terms based on whether the Subscriber pays by check or money order. The Court concludes that Plaintiffs have failed to demonstrate that the Payment Terms Modification leads to the inference that Sirius breached a contractual obligation by charging the $2.00 Invoice Administration Fee before Sirius's amended its Payment Terms.

tion of the text of the General Business Law § 349 leads us to conclude that 'in this state' can only modify 'the conduct of any business, trade, or commerce [or] the furnishing of any service.' The phrase 'deceptive acts or practices' under the statute is not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer. Thus, to qualify as a prohibited act under the statute, *the deception of a consumer must occur in New York.*

*Id.* (*quoting* N.Y. Gen. Bus. Law § 349(a)) (first emphasis and second alteration in original) (second emphasis added) (citation omitted). The *Goshen* Court further opined:

> To apply the statute to out-of-state transactions in the case before us would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of [GBL] § 349. Furthermore, the interpretation out-of-state plaintiffs would have us adopt would tread on the ability of other states to regulate their own markets and enforce their own consumer protection laws.

*Id.* at 325, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (citation omitted). Thus, the Court of Appeals held that for a plaintiff to sue under GBL § 349, "the transaction in which the consumer is [allegedly] deceived must occur in New York." *Id.* at 324, 746 N.Y.S.2d 858, 774 N.E.2d 1190; *see id.* at 325, 746 N.Y.S.2d 858, 774 N.E.2d 1190 ("[T]o qualify as a prohibited act under the statute, the deception of a consumer must occur in New York.").

Plaintiffs seek to establish that "as is evident from the [Third Amended] Complaint, they plead deceptive acts or transactions that occurred in New York." (Plaintiffs' September 21 Letter–Brief at 2.) However, the Third Amended Complaint asserts only the threadbare conclusion that "[t]he transaction between Sirius and Plaintiffs and other members of the class of providing services in exchange for payment of service and invoice fees occurred in New York." (TAC ¶ 41.) "Threadbare recitals of the elements of a [claim], supported by mere conclusory statements, do not suffice.... Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S.Ct. at 1949–50. Accordingly, the Court finds that the conclusory statement that Plaintiffs make in paragraph 41 of the Third Amended Complaint falls short of pleading facts from which the Court can infer deception of Kaufman, and those similarly-situated, that occurred in New York.

The pleading also alleges a laundry-list of connections to New York—none of which supports the inference that the deception occurred in New York. (*See* TAC ¶ 25 ("In breach of [the Payment Terms] and before the form of payment had been elected by the Plaintiffs, Sirius formulated and provided invoices from New York to each of the Plaintiffs indicating a $2.00 Invoice Administration Fee associated with the annual renewal of Sirius Satellite Radio accounts."); *id.* ¶ 29 ("Plaintiffs ... and other members of the class are persons who have been damaged by Sirius from within the State of New York by reason of Sirius'[s] violation of [GBL § 349.]"); *id.* ¶ 30 ("Sirius'[s] principal place of business is in New York City, New York, and [it] has been in the business of trade or commerce furnishing internet or satellite radio services from within the State of New York."); *id.* ¶ 32 ("Sirius'[s] corporate offices are located in New York."); *id.* ¶ 9 ("Sirius, by and through its corporate managers in New York, drafted and/or approved Sirius'[s]

[Payment Terms] and the amendments thereto from within the state of New York."); *id.* ¶ 35 ("Sirius, by and through its corporate managers in New York, formulated and/or approved the content of Sirius'[s] invoices, including those indicating the $2.00 Invoice Administration Fee, from and within the state of New York."); *id.* ¶ 40 ("Plaintiffs and other members of the class paid service and invoice fees including the [$2.00] Invoice Administration Fee to Sirius which it ultimately collected and now benefits from in New York."); *id.* ¶ 41 ("The transaction between Sirius and Plaintiffs and other members of the class of providing services in exchange for payment of service and invoice fees occurred in New York."); *id.* ¶ 43 ("Sirius collected, assimilated and accounted the unauthorized and unlawful [$2.00] Invoice Administration Fee[ ] by and through its corporate management in New York.").)

*Goshen* explicitly rejected the assertion of a GBL § 349 claim by non-New York plaintiffs who had not engaged in any transaction in New York, even though the allegedly improper scheme was "contrived and implemented" in New York by defendants that "have extensive ties to New York and conduct business in the state." 98 N.Y.2d at 321, 746 N.Y.S.2d 858, 774 N.E.2d 1190; *see also Pentair Water Treatment (OH) Company v. Continental Ins. Co.,* No. 08 Civ. 3604, 2009 WL 1119409, at *4 (S.D.N.Y. Apr. 26, 2009) ("New York law is clear that the fact that [defendant's] principal place of business is in New York is not sufficient to render GBL § 349 applicable."); *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.,* 642 F.Supp.2d 167, 203 n. 19 (S.D.N.Y.2009) ("The reach of [GBL § 349] is explicitly limited to the deception of consumers occurring in New York. It is not sufficient that a marketing plan originates in New York if the consumer deception occurs elsewhere. The [allegedly-deceptive] statement ... was sent to a potential cus-tomer in New Jersey and is thus outside the bailiwick of the New York statute." (citations to omitted)). In short, Plaintiffs have alleged many signals emanating from New York, but have failed to plead the essential act that must have transpired within the boundaries of the state to maintain a viable suit under GBL § 349: that the deception they allege having experienced occurred in New York. Thus, the Court concludes that Plaintiffs have not alleged sufficient facts from which it could reasonably deduce that Kaufman (or any similarly-situated non-New York residents) was deceived in New York.

### III. *ORDER*

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion of defendant Sirius XM Radio, Inc. to dismiss, in part, the complaint in this action of plaintiffs Alvin Kaufman and Richard LaLuna is GRANTED; and it is further

**ORDERED** that the parties are directed to appear for a telephone status conference on Thursday, November 18, 2010 at 2:00 p.m. prepared to discuss the case status and jurisdictional issues.

**SO ORDERED.**